RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DANIEL LEMON,

                *Plaintiff-Appellant*,

    *v.*

NORFOLK SOUTHERN RAILWAY COMPANY,

                *Defendant-Appellee*.

No. 19-3906

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:18-cv-01029—James G. Carr, District Judge.

Decided and Filed: April 30, 2020

Before: MERRITT, SUHRHEINRICH, and SUTTON, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** E.J. Leizerman, E.J. LEIZERMAN LAW FIRM, Sylvania, Ohio, for Appellant. Ami N. Wynne, Jason G. Marsico, SIDLEY AUSTIN LLP, Chicago, Illinois, Joseph C. Devine, BAKER & HOSTETLER, Columbus, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

SUTTON, Circuit Judge. One evening after work, Daniel Lemon told his employer, Norfolk Southern Railway, that he hurt himself on the job. In the process of investigating the report, the railroad learned that Lemon told coworkers that he injured himself at home. It fired him for telling tales. Because railroads may not retaliate against employees for reporting on-the-

job injuries, Lemon sued.  Because railroads may fire employees for making false statements, we affirm the district court's summary judgment ruling for the railroad.

We may never know how Daniel Lemon pinched a nerve in his neck on the morning of December 16, 2015.  He asked a coworker for an Advil that morning, explaining that he hurt his neck by "turn[ing] his head just right."  R. 19-7 at 55.  That afternoon, when the pain increased, he asked another coworker to cover his shift so that he could see a doctor.  He explained that he hurt his neck while walking down stairs at home.

While waiting at the hospital, Lemon texted a third coworker that he "tweaked" his neck at home that morning.  R. 18-4 at 35.  He first told the doctor that he hurt himself at home, then told him that he hurt himself while walking or falling down stairs at work.  He told his mother that he hurt himself at work.

That evening, he reported the injury to his supervisor.  This time, he claimed he slipped walking *up* the stairs at work.  He also told the supervisor, falsely, that he did not discuss the injury with any coworkers.  When Lemon's supervisor began investigating the injury, he learned that Lemon talked to his coworkers after all and told them different stories about it.

In the formal injury report that Lemon filed the next day, he said that he stumbled going up the stairs at work.

Lemon worked for Norfolk Southern Railroad, which has a policy of firing workers who make false statements at work.  The railroad held a hearing on whether Lemon violated the policy.  Lemon participated in the hearing, represented by his union.  After the hearing, the railroad fired Lemon for dishonesty.

Lemon filed a complaint with the Occupational Safety and Health Administration claiming the railroad violated the Federal Railroad Safety Act, 49 U.S.C. § 20101 et seq., by retaliating against him for reporting a workplace injury in good faith, *id.* § 20109(a)(4), (d)(1).  The agency dismissed his complaint.  Lemon filed an administrative appeal.  After the statutory deadline for a ruling came and went, he leapfrogged the agency by suing in federal district court, taking advantage of the Act's "kick-out" provision.  *Id.* § 20109(d)(3); *Gunderson*

*v. BNSF Ry. Co.*, 850 F.3d 962, 967 (8th Cir. 2017). We thus consider his claim without deferring to the agency's determinations. 49 U.S.C. § 20109(d)(3).

Both parties moved for summary judgment. The district court granted summary judgment to the railroad, concluding that Lemon's dissembling left no dispute about whether Lemon reported his injury in good faith. Lemon appeals.

We ask the same question the district court asked in reviewing the parties' summary-judgment motions: Have the parties introduced sufficient material facts that a jury could reasonably rule for either of them? *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If not, the case should not go to a jury because a reasonable jury could reach only one verdict.

In resolving the case, we need not go through each element of a retaliation claim under the Federal Railroad Safety Act, decide how, if at all, a burden-shifting framework applies to them, or resolve whether "contributing factor" is the correct causation standard. The parties agree on the framework of decision.

Even so, we pause to mention a few uncertainties about these premises. On the one hand, every court to consider a claim under the Act has concluded that claims under § 20109(d)(1) and § 20109(d)(3) use the "rules and procedures" and "burdens of proof" in 49 U.S.C. § 42121. *See, e.g.*, *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018); *Araujo v. N.J. Transit Rail Ops., Inc.*, 708 F.3d 152, 157 (3d Cir. 2013). Supporting that view, two other statutes that incorporate § 42121 by reference apply its burdens of proof to both agency and federal court claims. 49 U.S.C. § 31105(b)(1); 18 U.S.C. § 1514A(b)(2)(C). *See, e.g.*, *Maverick Transp., LLC v. U.S. Dep't of Labor*, 739 F.3d 1149, 1155 (8th Cir. 2014); *Genberg v. Porter*, 882 F.3d 1249, 1254 (10th Cir. 2018). On the other hand, § 20109 says that the portions of § 42121 that it incorporates apply only to "action[s] under paragraph [(d)](1)"—apply in other words only to agency actions, not kick-out actions under § 20109(d)(3) like this one. 49 U.S.C. § 20109(d)(2)(A). Incorporating § 42121's procedures into federal court kick-out actions potentially reads the jury trial right out of § 20109(d)(3) and requires the Secretary of Labor to investigate midway through district court proceedings. *Id.* § 42121(b)(2)(A).

Also opaque is whether "contributing factor" causation, the standard in § 42121, is one of the "rules and procedures" or "burdens of proof" incorporated into § 20109. *Id.* § 42121(b)(2)(B)(i). A causation requirement doesn't seem to fit naturally into either category. And applying "contributing factor" causation to § 20109(d) actions could read the causation standard for different kinds of protected activities out of § 20109(a)–(c) ("due, in whole or in part"; "for"). *Id.* § 20109(a), (c)(2). That is odd because Congress tweaked one of those standards at the same time it added the reference to § 42121, suggesting the partial incorporation of § 42121 did not extend to substituting its causation standard for the ones in § 20109. P.L. 110–53, § 1521, 121 Stat. 266 (Aug. 3, 2007).

But the elements of the claim and any burden-shifting framework associated with it do not affect our jurisdiction, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513–16 (2007), meaning the parties have forfeited any contrary arguments. The parties agree that Lemon must show that his injury report was a "contributing factor" in the railroad's decision to fire him, and Lemon cannot prevail if the railroad would have fired him anyway.

By all measures, Lemon's injury report was not a contributing factor in the railroad's decision to fire him. The record confirms that the railroad would have fired him anyway due to his false statements. That's what the railroad investigated and held a hearing about, and what the decisionmaker said. And it's hard to deny that false statements about the nature of an injury—whether at work or at home—in the context of seeking benefits from an employer count as an adequate explanation for discharging an employee.

Lemon insists that the record contains a fact dispute over the point given statements in a deposition and an affidavit that the railroad regularly cooks up pretextual reasons for discipline to retaliate against people who file injury reports. The argument runs into three problems. One, these kinds of vague, conclusory statements do not suffice to get a case to a jury. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990); *Viet v. Le*, 951 F.3d 818, 825 (6th Cir. 2020); *Gardner v. Evans*, 920 F.3d 1038, 1054–55 (6th Cir. 2019). Two, we may consider information at summary judgment only if it would be admissible at trial. Fed. R. Civ. P. 56(e)(4). But these statements, made by unidentified speakers, all turn on second-hand gossip—inadmissible hearsay—around the railroad terminal about the supposed reasons for the railroad's disciplinary

actions. *See Parker v. Winwood*, 938 F.3d 833, 836–38 (6th Cir. 2019). Three, even if Lemon provided concrete, admissible evidence of a policy of pretextual retaliation, that would not alter the reality that Lemon hasn't shown the railroad retaliated against *him*. On the contrary, the record shows that the railroad regularly enforced its policy against making false statements. Lemon himself admitted that discipline was appropriate for such statements. And Lemon says no one at the railroad ever discouraged him from reporting his injury or threatened him with retaliation for it.

Lemon next says that his injury report was a contributing factor in the railroad's decision to fire him because, without the injury report, he would not have lied to his supervisor about speaking to others and, without that falsehood and others discovered later, he would not have been fired.

This chain-of-events theory of causation suffers from two problems: It does too much, and it does too little.

It does too much because it's hard to think of any event in a person's life that could not be viewed as a contributing factor under this theory. Consider: A woman quits her job after becoming frustrated over few promotion opportunities. Even though she could not have quit without taking the job in the first place, we would not say accepting the job was a contributing factor to her decision to leave it. Or: Two cars crash after one of them runs a red light. If one driver would have stayed home had he not needed to pick up an item at the grocery store, we would not say his empty pantry was a contributing factor to the accident. Or: Someone gets food poisoning from eating a fish sandwich while on vacation in Alaska. Even though she would not have gotten food poisoning without the employer's approval to take time off, we would not say the employer's decision was a contributing factor to her food poisoning. One could even say that "[t]he plaintiff's having been born was an initiating event without which he would not exist, but obviously an event devoid of legal significance." *Koziara v. BNSF Ry.*, 840 F.3d 873, 878 (7th Cir. 2016). Lemon's view of contributing factors eliminates causation from the liability inquiry, giving it no "legal significance" in some ways and making a mockery of it in others.

His test does too little because it would authorize employees to engage in banned behavior so long as it occurs during protected conduct. Imagine an employee who makes a pass at his manager while reporting an injury. Discipline in that case would clearly be caused—and justified—by the harassment, whether or not it occurred when he gave his boss the injury report. One need not look far for a concrete example. In *BNSF Railway Co. v. U.S. Department of Labor*, on which Lemon relies, an employee's injury report indicated that he violated company policy, and the company disciplined him for the violation. 816 F.3d 628, 639 (10th Cir. 2016). The court rejected the idea that the injury report immunized the employee from discipline for his rule violation. *Id.* It demanded more than a showing that his report "loosely le[d] to his firing" because the report formed part of a chain of events leading up to a disciplinary action. *Id.*

Also unavailing are Lemon's case citations: *BNSF Ry. Co.*, 816 F.3d at 639; *Ray v. Union Pac. R.R. Co.*, 971 F. Supp. 2d 869, 886–88 (S.D. Iowa 2013); *Miller v. CSX Transp.*, No. 1:13-cv-734, 2015 WL 5016507, at *9 (S.D. Ohio Aug. 25, 2015). As just shown, *BNSF Railway Co.* undermines Lemon's position. And the Eighth Circuit rejected the position adopted by the district court in *Ray*, *Heim v. BNSF Ry. Co.*, 849 F.3d 723, 727 (8th Cir. 2017), just as we now reject the position the district court adopted in *Miller*.

Lemon adds that he was on pain medication when he told his supervisor how he was injured and when he claimed he didn't discuss the injury with coworkers. Fair enough. But one problem lingers: His argument leaves a category of contradictory statements untouched. Even if we dismiss his evening report as a pain-medication-induced mistake, Lemon still spent the day telling his coworkers different stories about how he injured himself, long before receiving any pain medication stronger than Advil.

We affirm.