NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0584n.06

Case No. 21-3059

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Dec 14, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAVID H. MANGOLD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| NORFOLK SOUTHERN RAILWAY | ) | DISTRICT OF OHIO |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | O P I N I O N |
| | ) | |

BEFORE: COLE, GIBBONS, and LARSEN, Circuit Judges.

COLE, Circuit Judge. David Mangold, a locomotive engineer, filed suit against his former employer, Norfolk Southern Railway Company, alleging that he was terminated in retaliation for his zealous reporting of various locomotive safety and occupational health issues in violation of the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"). He also alleged that Norfolk failed to comply with the terms of a 2017 settlement agreement borne out of a previous retaliation case. Norfolk moved for summary judgment, arguing that Mangold failed to establish a prima facie case of retaliation and that he waived his breach of contract claim by failing to address it in his opposition brief. The district court agreed and dismissed Mangold's claims. Mangold now appeals, arguing that the district court erred. He also brings an additional claim that the district

court applied the wrong standard when evaluating his FRSA claim. Because the district court did not err, we affirm.

## I.  BACKGROUND

### A.  Factual Background

David H. Mangold began working with Consolidated Rail Corporation ("Conrail") in 1995. Mangold subsequently became an employee of Norfolk Southern Railway Corporation ("Norfolk") when it acquired Conrail in 1999. During his employment, Mangold made almost daily complaints, reports, and notes of locomotive defects and other safety issues. Mangold's service record, however, was also marked by disciplinary violations, major and minor, under Norfolk's progressive discipline system.

Norfolk uses a discipline system called "S.T.A.R.T." (System Teamwork and Responsibility Training). Rule infractions under S.T.A.R.T. "are divided into three categories: minor, serious, and major." While one-off minor offenses are handled with counseling, an employee's first "serious" offense in a 24-month period results in a deferred suspension. A second serious offense occurring in the same 24-month period results in actual suspension. A third can warrant dismissal. Serious offenses include, relevantly, "speeding [and] rule violations such as those resulting in revocation of locomotive engineer certificate." (S.T.A.R.T. Policy, R. 19-5, PageID 186.)

More extreme infractions, such as "altercation[s]," "insubordination," "excessive speeding," and "passing stop signals," are major offenses. (*Id.*) A major offense warrants removal from service pending a formal hearing and possible dismissal from service for a single such occurrence if proven guilty.

Mangold was disciplined for several S.T.A.R.T. serious offenses over the course of his time with Norfolk but did not run afoul of the progressive discipline system until 2015.

On December 29, 2015, Mangold was found to have improperly handled a train, a S.T.A.R.T. serious offense, and was suspended. (Mangold Employee Profile, R. 19-2, PageID 177.) Six months later, on June 20, 2016, Mangold was dismissed from all service with Norfolk for failing to follow a supervisor's instructions to complete a certification packet that was necessary to recertify his engineer's license. This was consistent with a S.T.A.R.T. major designation.

On July 20, 2016, Mangold filed an FRSA whistleblower complaint with the Occupational Safety and Health Administration ("OSHA"), alleging that his dismissal was in retaliation for his safety reporting. On November 18, 2016, he was reinstated to his position as a part of an agreement settling that claim. Pursuant to the settlement agreement, Mangold waived any right to pursue his retaliation claims or to obtain recovery against Norfolk related to any alleged FRSA violations prior to the settlement agreement.

Once he was reinstated, Mangold continued to report alleged locomotive mechanical defects. Mangold also received two unfavorable personnel decisions, which form the basis of his lawsuit.

The first was a letter of reprimand following an incident when Mangold failed to properly shut down his locomotive. On March 5, 2017, Trainmaster Korey Peters discovered that the batteries were dead on the locomotive for which Mangold had responsibility. Peters interviewed Mangold, who confirmed that he left all the breakers up to make it easier for the incoming crew to restart the locomotive. The breakers regulate power to the train. Leaving the circuit breakers "up" means that the train was able to draw power from its battery. On March 9, 2017, Peters charged Mangold with failing to properly shut down the train.

At an investigative hearing, presided over by Hearing Officer Nathaniel Gaines, Mangold once again admitted that he left the breakers up, although he believed that this action would not

normally cause the battery to die. On March 28, 2017, Mangold received a Letter of Reprimand, signed by Gaines, finding that Mangold had failed to properly shut down his locomotive. Mangold's Brotherhood of Locomotive Engineers and Trainmen representative, Patrick Redmond, decided not to appeal the Letter of Reprimand because it was less severe than the S.T.A.R.T. minor offense Mangold was originally offered.

Three months later, Mangold was charged in another disciplinary incident when Mangold pulled his train out of a crossing without a signal to do so from the dispatcher. The train's conductor, David Wheeler, intervened to get Mangold to stop the train. Trainmaster Kevin Keel reported this incident to Division Road Foreman J. M. Marotti. After reviewing the relevant data, Marotti charged Mangold with both speeding and inattention to duty. On July 11, 2017, a formal investigative hearing was conducted. Redmond once again represented Mangold. Mangold admitted that he was traveling 14 miles-per-hour (but that he believed that he had cleared the 10 mile-per-hour restricted area), and that he moved the train he was operating without a signal.

On July 26, 2017, Mangold was found "guilty as charged" and dismissed from service by Hearing Officer Will Washington.

## B. Procedural History

On August 4, 2017, Mangold filed a complaint with OSHA, alleging that he was once again terminated in retaliation for making safety reports, in violation of the FRSA. On March 15, 2019, OSHA notified Mangold that its investigation concluded that Mangold's alleged protected activity did not contribute to his termination. On April 11, 2019, Mangold objected to this finding and requested a hearing before an Administrative Law Judge. On January 13, 2020, Mangold informed the Department of Labor that he intended to exercise the FRSA's "kick out" provision, under

§ 20109(d)(3), and seek de novo review in the district court, as the matter had been pending for longer than 210 days without a final decision.

Mangold filed his complaint in the Northern District of Ohio on January 31, 2020, alleging that he was reprimanded and fired due in whole or in part to his history of protected activity. In a section entitled "COUNT TWO: BREACH OF AGREEMENT," Mangold also alleged that Norfolk had not complied with the January 2017 Settlement Agreement, "in violation of [the] Whistleblower Act." (Compl., R. 1, PageID 8.)

On August 3, 2020, Norfolk filed a motion for summary judgment, as well as a motion to dismiss for want of prosecution. Although the district court noted that Norfolk had made a compelling claim for dismissal as a sanction for Mangold and his counsel's "inattention to the prosecution of this case," it elected to address Mangold's case on the merits. (Mem. Op. & Order, R. 39, PageID 858–59.) Applying the test for FRSA retaliation claims articulated in *Consolidated Rail Corp. ("Conrail") v. United States Dep't of Labor*, 567 F. App'x 334 (6th Cir. 2014), the district court concluded that summary judgment in favor of Norfolk was warranted. The district court found that Mangold had not cited evidence in the record showing that the relevant decisionmakers—Peters, Gaines, Marotti, and Washington—were aware of his protected activity prior to disciplining him. It also determined that Mangold's intervening actions—leaving the breakers up on the train, speeding, and inattention to duty—independently justified Norfolk's decisions, such that Mangold failed to establish that his protected activity was a "contributing factor" in his discipline and discharge.

The court also found that, to the extent Mangold had pleaded a breach of contract claim, it was abandoned, as he did not address it in his opposition brief. Finally, even if Mangold had properly addressed this issue, Mangold testified that Norfolk did make officials available to him

to discuss his concerns once he requested that it do so, demonstrating that Norfolk complied with the settlement agreement and thus that the claim should be dismissed.

Mangold appeals. While he frames his appeal as having four issues, there are only two before us—whether the district court properly applied the test outlined in *Conrail*, and whether, following that test, the district court properly granted summary judgment as to Mangold's claims.

## II. ANALYSIS

We review an order granting summary judgment de novo and view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

### A. Whether the District Court Applied the Correct Test for Establishing an FRSA Retaliation Claim

Mangold frames his first issue on appeal as a Presentment Clause challenge. The Presentment Clause, found in Article I, Section 2 of the Constitution, governs the enactment, amendment, and repeal of statutes by the legislative and executive branches. *See I.N.S. v. Chadha*, 462 U.S. 919, 954 (1983). Mangold argues that the district court improperly legislated from the bench when it, in keeping with precedent from other circuits and this court's precedent in other retaliatory employment contexts, required that Mangold "point to record evidence that would create a genuine issue of material fact as to whether the decision-makers had knowledge." (Mem. Op. & Order, R. 39, PageID 865.) Norfolk argues that this claim is waived because Mangold did not present it to the district court.

It is well-settled that, absent exceptional circumstances, issues not presented to the district court are not properly before us on appeal. *See Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014) ("Generally, we will not address arguments raised for the first time on appeal."). Accordingly, we decline to address Mangold's argument.

**B. Whether the District Court Erred in Granting Summary Judgment for Norfolk**

The parties do not dispute that we should apply the test set forth in *Conrail*.[1] Mangold must show that: "(1) he engaged in protected activity; (2) the employer knew that he engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action." *Conrail*, 567 F. App'x at 337 (citing *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013)). Once a plaintiff makes a prima facie case that the protected activity was a contributing factor to the unfavorable personnel action, the defendant must prove "by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected behavior." *Id.* (quoting 29 C.F.R. § 1982.109(b)).

Applying this test, the district court did not err in granting Norfolk's motion for summary judgment. It is undisputed that Mangold regularly and frequently engaged in protected activities, such as making safety reports. On appeal, Norfolk does not dispute that Mangold suffered two unfavorable personnel decisions: a March 28, 2017 letter of reprimand and his July 26, 2017 termination. Therefore, the only two elements at issue are whether the relevant decisionmakers

---

[1] This court in *Lemon* acknowledged that there are two tensions within the FRSA: (1) whether the same burden of proof applies to "kick-out actions" like Mangold's as to agency actions, and (2) whether a "contributing factor" is a rule or procedure that was necessarily incorporated with the FRSA's amendment. *See Lemon v. Norfolk S. Ry. Co.*, 958 F.3d 417, 419 (6th Cir. 2020). However, the parties in *Lemon*, like the parties here, "forfeited any contrary arguments," *id.*, and therefore we need not address these shortcomings.

knew that Mangold engaged in protected activity and whether the protected activity was a contributing factor in the unfavorable personnel action.

It is undisputed that the relevant decisionmakers for Mangold's termination were Marotti and Washington. The decisionmakers for the letter of reprimand were Peters and Gaines.

Norfolk presented signed affidavits from Gaines and Washington indicating that they were not aware of Mangold's safety concerns and, even if they had been aware, they would not have considered the reports when making their decisions since the reports were not relevant to the incidents at issue in their respective investigations. Norfolk also relies on Mangold's own testimony to establish that the relevant decisionmakers did not know about Mangold's protected activities. Mangold never made any safety reports directly to Peters and admitted that Peters would have only been made aware of his reports through his investigation of the battery incident. Mangold also never made any reports directly to Gaines, nor did he have any interactions with Gaines prior to the hearing.

Given that, with this evidence, Norfolk has established that no genuine dispute as to any material fact remains as to this issue, Mangold "must come forward with specific facts or affidavits to support [his] claims and show the existence of a genuine, material [fact] in dispute." *National Solid Wastes Mgmt. Ass'n v. Voinovich*, 959 F.2d 590, 592 (6th Cir. 1992). However, he fails to do so.

Mangold cites the following to support the fact that decisionmakers knew he engaged in protected activity:

1. A May 4, 2016 letter from Andrew Jones, memorializing a conversation between Jones, Patrick Redmond, and Jeff Allen, which chastised Mangold for reporting non-locomotive defects. A "J. Gentsch" was cc'd on the message.

2. An April 16, 2016 email from Steve Grankowski listing Norfolk's rules regarding calendar day inspections. Sean Roberts, Kevin Schmidt, James Schulz, Brent Toth, Mark Emery, Robert Tebeau, Jim Lanning, and Andrew Jones were cc'd on the email, as well as the email TN_OSS_DB_CLEVE_TN@exhange.nscorp.com.

There is nothing in either correspondence that indicates that any decisionmaker received them. While Mangold argues that these emails and letters became a part of Mangold's permanent personal file and would have been a part of his record when the relevant decisionmakers made the decision to terminate him, he provides no support for the allegation that these materials were a part of his record or that any decisionmaker viewed them, outside of his own argument. Mangold's allegations that he had a meeting with Marotti in May 2017, prior to his termination, suffers from the same issue—there is simply no evidence it occurred.

Mangold also argues, in essence, that his reporting was so commonly known that it would have been impossible for a decisionmaker not to have been aware of it. This is not, however, competent evidence on a motion for summary judgment as "these kinds of vague, conclusory statements do not suffice to get a case to a jury." *Lemon*, 958 F.3d at 420; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Even if Mangold's unsupported arguments were sufficient to establish that the relevant decisionmakers had knowledge of his protected activity, his claim would fail because he does not demonstrate that his reports of safety violations were a contributing factor to his termination or his letter of reprimand.

"[T]he contributing factor standard has been understood to mean 'any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision.'" *Conrail*, 567 F. App'x at 338 (first citing *Araujo*, 708 F.3d at 158; and then citing *Lockheed Martin*

*Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1136 (10th Cir. 2013)). In an FRSA case, where "[t]he record confirms that the railroad would have [disciplined] [an employee] anyway," the plaintiff fails to meet this standard. *Lemon*, 958 F.3d at 419.

Mangold leans on the temporal proximity of his daily reports to the adverse actions to support his claim of retaliation. The temporal proximity alone, however, is not sufficient to overcome a prima facie case of retaliation for three reasons. First, as previously discussed, there is no indication that any decisionmaker had knowledge of Mangold's protected activities when the decisions to discipline him were made, so there is no evidence that his reports motivated those decisions. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1213 (10th Cir. 2018) ("For how can decisionmakers retaliate against an employee for taking protected activity if they do not know about the protected activity?").

Second, as in *Lemon*, Norfolk investigated and held a hearing about Mangold's rule-breaking, where Mangold was represented by his union and permitted to cross-examine witnesses, speak on his own behalf, and answer questions. At no point in time was Mangold's safety reporting raised during these hearings because the disciplinary investigations that led to Mangold's unfavorable personnel actions were completely unrelated to his protected activity. *See Gunderson v. BNSF Ry. Comp.*, 850 F.3d 962, 969 (10th Cir. 2017); *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 792 (8th Cir. 2014). Indeed, Mangold's actions that led to the hearings were "intervening event[s] that *independently* justified adverse disciplinary action," thus weighing against the idea that his reporting was a contributing factor to his discipline. *Kuduk*, 768 F.3d at 792.

Third, even if we assume that Marotti or Peters called for a hearing and investigation into Mangold due to his reporting of alleged defects and violations, Mangold provides no evidence

whatsoever that the hearing officers and final decisionmakers, Washington and Gaines, were influenced by Mangold's protected activity or the charging officers' alleged biases. *See id.* at 791.

The only other argument Mangold raises is that he should not have been charged with any disciplinary infractions in the first place, as he did not violate any rules. However, courts do not act as a "super-personnel department" and re-examine an employer's disciplinary decisions. *Id.* at 792. To do so here would be particularly improper in view of the fact that Mangold has provided scant evidence that anything other than his own negligence motivated the decisions to discipline him. As the district court put it:

> In light of the undisputed record evidence that Mangold's discipline—which was unrelated to his protected activity, administered in accordance with START procedures and the collective bargaining agreement after a hearing where he was represented and given a full opportunity to present his case, and imposed by decision-makers unaware of his protected activity—was issued in good faith, Mangold's unsupported speculations as to retaliation fail to show pretext.

(Mem. Op. & Order, R. 39, PageID 870.)

We therefore affirm the grant of summary judgment in favor of Norfolk. Given this, we need not consider the district court's alternative ground, that Norfolk proved by clear and convincing evidence it would have dismissed Mangold regardless of his protected activity.

## C. Breach of Contract

Mangold does not address the district court's conclusion that he forfeited his breach of contract claim in his briefing or make any argument as to why the issue was not forfeited. Instead, Mangold repeats his conclusory allegation that the terms of his 2017 Settlement Agreement were violated because Norfolk failed to make anyone available to speak with him about his safety concerns until he asked. Even if we were to disregard the district court's finding that Mangold's opposition brief failed to address this argument, Mangold has "forfeited the issue on appeal via his perfunctory mentions of [breach of contract] in his brief." *Watkins v. Healy*, 986 F.3d 648, 667

(6th Cir. 2021). By failing to expressly appeal the district court's holding, Mangold has forfeited any challenge to the dismissal of his breach of contract claim. *See Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008) ("[A]n issue is deemed forfeited on appeal if it is merely mentioned and not developed." (quoting *United States v. Clark*, 469 F.3d 568, 569–70 (6th Cir. 2006))).

## III. CONCLUSION

The judgment of the district court is hereby affirmed.