**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0390n.06

Case No. 13-3740

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
May 28, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CONSOLIDATED RAIL CORPORATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM A FINAL ORDER OF |
| U.S. DEPARTMENT OF LABOR, | ) | THE ADMINISTRATIVE |
| | ) | REVIEW BOARD, UNITED |
| Respondent, | ) | STATES DEPARTMENT OF |
| | ) | LABOR |
| MARK BAILEY, | ) | |
| | ) | |
| Intervenor. | ) | **O P I N I O N** |
| | ) | |

**BEFORE: DAUGHTREY, McKEAGUE, and GRIFFIN, Circuit Judges.**

**McKeague, Circuit Judge.** This case concerns whether an employee was terminated in violation of the Federal Rail Safety Act. For the reasons that follow, we deny Consolidated Rail's petition for review.

I.

From December 1998 to February 2011, Mark Bailey worked as a train conductor for Consolidated Rail ("Conrail"). In the six months before he was terminated, Bailey filed approximately thirty-five formal written safety complaints. On February 11, 2011, Kenneth McIntyre, the Area Superintendent, instructed Robert Conley, Bailey's Supervisor, to speak with the railroad employees about a recent accident. Conley entered the lunchroom to convey the

message. Conley said "Good Morning" to Bailey and a railroad engineer, Brian McBain. Bailey did not respond. Conley again said "Good Morning" and then added "or not." Bailey responded that he would not talk to Conley unless it involved a work-related issue. Conley then stated that he could talk to him if he wanted. Bailey retorted, "Do you want to tangle with me?"

Conley then phoned McIntyre, who requested a meeting. Conley led Bailey and McBain, who served as a witness, upstairs to McIntyre's office. Conley said he feared for his safety. McIntyre suspended Bailey indefinitely pending a formal investigatory hearing to which Bailey was entitled under the railroad's collective bargaining agreement. McIntyre then flicked or tossed several of Bailey's safety reports across his desk and said, "Here, I know you keep these."

The other witnesses had interpreted the exchange differently than Conley. McBain testified that he did not think that Bailey had threatened Conley. A dozen employees present at the time of the incident signed a statement indicating that they did not witness anything unusual. Another yardmaster, Alvin Coles, testified that he overheard the incident from his office and that he did not find it distracting. At Bailey's hearing, Bailey was permitted to cross-examine witnesses, testify, and make a closing statement. McIntyre delivered a transcript of the hearing to Joseph Price, Conrail's Manager of Field Operations. Notably, Price was McIntyre's subordinate, and had shared an office with McIntyre for a year. According to Price, he reviewed the hearing transcript without any of its accompanying exhibits and terminated Bailey because his conduct violated Conrail's zero-tolerance policy for threats.

On March 21, 2011, Bailey filed a whistleblower complaint with the Occupational Health and Safety Administration, which was dismissed. Bailey appealed to an Administrative Law Judge. On December 31, 2012, after considering nearly a dozen witnesses' testimony and over three dozen exhibits, the ALJ issued a thirty-seven page opinion. The ALJ found: (1) that "Mr.

Price did not seem familiar with some basic facts found in the hearing transcript" and that "Mr. Price simply ratified the charges already put into motion by Mr. McIntyre," ALJ decision at 24–25; (2) that Bailey's allegation of a conspiracy by Conrail management to get him fired was without merit, *id.* at 27; (3) that the "actions by Mr. McIntyre and Mr. Conley demonstrate that management was irritated with [Bailey] for his frequent filing of safety reports," *id.*; (4) "that Mr. Conley's description of the incident lacks credibility, that Mr. Conley attempted to exaggerate the events that occurred[,]" and that "Mr. Conley chose to escalate the exchange," *id.* at 29; (5) that another witness "credibly testified that Mr. Conley had told him that he and [Bailey] 'got fairly close' and were 'nose-to-nose,' whereas at trial, Mr. Conley admitted that [Bailey] was 10-20 feet away from him," *id.* at 30; and lastly, (6) that "[Conrail's] stated explanation for its adverse action against [Bailey] is not worthy of credence" and that "[t]here is an abundance of evidence that contradicts Conrail's contention that management perceived [Bailey's] words to be a threat." *Id.* In the course of dismissing Conrail's argument that it would have terminated Bailey for the alleged threat despite his protected activity, the ALJ found that "[a]lthough Mr. Price's decision occurred following an investigation and hearing, this is insufficient to sever the influence by Mr. McIntyre because Mr. McIntyre participated in the investigation and testified against [Bailey] at the hearing." *Id.* at 31. The ALJ reasoned that "there were past instances of threats where [Conrail] did not take disciplinary action as a result[.]"[1] *Id.* at 30. The ALJ held "that Bailey had established by a preponderance of the

---

[1] *Id.* at 20 ("[P]rofane language and heated conversations among employees and between employees and supervisors were tolerated at part and parcel of the nature of the work environment and a common occurrence at the Railroad."); *id.* at 30 (testifying that a coworker of Bailey had yelled at his trainmaster and "backed him right into another room and continued yelling at him" and no disciplinary action was taken); *id.* at 10 (stating that a yardmaster complained that Bailey had threatened him but McIntyre did not follow the zero tolerance policy "because there was no evidence of a threat since the yardmaster had withdrawn his complaint"

evidence that his protected activity contributed to his suspension and ultimate dismissal" and "that Conrail had failed to satisfy its burden of proving by clear and convincing evidence that it would have taken the same action absent the protected activity." *Id.* at 30, 32. The ALJ awarded Bailey reinstatement and compensatory damages for Conrail's wrongful termination of his employment.

Both parties petitioned the Administrative Review Board ("ARB") for review of the ALJ's findings. On April 22, 2013, the ARB affirmed the ALJ on the basis that "the ALJ's factual findings are supported by substantial evidence in the record." This appeal followed.

II.

This action is governed by the Federal Rail Safety Act. 49 U.S.C. § 20109. The FRSA states that railroad carriers "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part" to any protected activities, such as providing information that the "employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security[.]" *Id.* § 20109(a). The FRSA incorporates by reference the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, under which an employee must show that (1) he engaged in protected activity; (2) the employer knew that he engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action. *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013). The employee bears the initial burden, and must show "by a preponderance of the evidence that protected activity was a contributing factor in the adverse

---

and "because [the yardmaster] would not testify against a fellow union employee"); *id.* at 13, 16 (stating that "one co-worker would get very upset, yell at the yardmaster over the radio, and break his lanyard" and that "this employee was never dismissed from employment for such actions").

action alleged in the complaint." 29 C.F.R. § 1982.109(a). The burden then shifts to the employer, who must demonstrate "by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected behavior." *Id.* § 1982.109(b).

Importantly, this case comes before the court on Conrail's petition for review of the ARB's decision. The "factual determinations by the Department of Labor must be affirmed if they are supported by substantial evidence, which is more than a scintilla, but less than a preponderance, of the evidence." *Ind. Mich. Power Co. v. U.S. Dep't of Labor*, 278 F. App'x 597, 602 (6th Cir. 2008) (internal quotation marks omitted). The substantial evidence standard is highly deferential, meaning this court "must uphold the [ARB's] findings . . . even if the court would justifiably have made a different choice had the matter been before it de novo." *Yadav v. L-3 Commc'ns Corp.*, 462 F. App'x 533, 536 (6th Cir. 2012) (internal quotation marks omitted). The ARB's legal conclusions are reviewed de novo. *Belt v. U.S. Dep't of Labor*, 163 F. App'x 382, 386 (6th Cir. 2006).

### III.

The first issue for us to decide is whether substantial evidence supports the ruling below that Bailey established, by a preponderance of the evidence, the four prongs of the prima facie case. *See* 29 C.F.R. § 1982.109(a). Only the second prong—whether the employer knew of his protected activity, and the fourth prong—whether Bailey's protected activity was a contributing factor in his termination, are at issue. *See Araujo*, 708 F.3d at 157.

As to the second prong, a "plaintiff is not required to have direct evidence [of knowledge and] may [produce] circumstantial evidence to establish this element of her claim." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 374 (6th Cir. 2013). The ALJ found Price's testimony that he was unaware of Bailey's protected activity not credible because the transcript Price

reviewed referenced Bailey's safety reports. The ALJ also found that Price had knowledge because he shared an office with McIntyre, who both supervised Bailey and returned to him the safety reports. This constitutes substantial evidence that supports the ALJ's determination that Price had knowledge of Bailey's protected activity.

As to the fourth prong, the contributing factor standard has been understood to mean "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *See Araujo*, 708 F.3d at 158; *see also Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1136 (10th Cir. 2013). The ALJ noted McIntyre's "flicking" across the table of the safety reports, the alleged request to quit sending in safety reports, and Conley's asking why Bailey still worked there. This constitutes substantial evidence that animus was a contributing factor in Bailey's termination. *See Ind. Mich. Power Co.*, 278 F. App'x at 602.

In light of the fact that McIntyre and Conley displayed hostility towards Bailey rather than Price, the ALJ imputed McIntyre and Conley's hostility to Price under a "cat's paw" theory of liability. Conrail argues that the ALJ's conclusion runs contrary to *Staub v. Proctor Hospital*, 131 S. Ct. 1186, 1194 (2011), in which the Court held that "if a supervisor performs an act motivated by . . . animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer [may be found liable.]" The Court declined to adopt a "hard-and-fast rule" providing that a decision-maker's "independent investigation (and rejection) of the employee's allegations of discriminatory animus" alone was sufficient "to negate the effect of the prior discrimination[.]" *Id.* at 1193. The ALJ noted that Price was unaware of any exhibits despite the transcript's multiple references and unfamiliar with basic facts in the transcript. This constitutes substantial evidence that *Price's review* of the transcript was not sufficiently independent to avoid liability

under the "cat's paw" theory. This conclusion is in line with *Staub*, which notes that the employer is not liable in situations where the employer's independent investigation "*results* in an adverse action" and observes that the "mere conduct of an independent investigation" would not necessarily preclude an employee's claim of wrongful termination. *See id*.

IV.

The final issue for us to determine is whether the ALJ's determination that Conrail did not prove by clear and convincing evidence that it would have terminated Bailey's employment despite Bailey's protected activity is supported by substantial evidence. The ALJ noted that witnesses disputed whether Bailey's "tangle" comment was even truly threatening. Given the conflicting accounts, we cannot say that the ALJ's crediting other witnesses' testimony rather than Conley's or McIntyre's was unsupported by the evidence. Moreover, Conrail failed to provide any evidence of disciplinary action taken as a result of a threat by an employee against another employee. Given the multiple incidents of employee behavior that seemingly violated Conrail's zero-tolerance policy, substantial evidence supports the ALJ's conclusion. *See Covucci v. Serv. Merch. Co., Inc.*, 115 F. App'x 797, 800 (6th Cir. 2004).

V.

The ALJ's determinations that a prima facie case was demonstrated by a preponderance of the evidence and that Conrail would not have terminated Bailey's employment in the absence of his protected activity are supported by substantial evidence. Conrail's petition for review is therefore DENIED.