RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARIAH WALL; CHRISTOPHER BOSTON; CRAIG MULHINCH,

*Plaintiffs-Appellants*,

*v.*

MICHIGAN RENTAL; ZAKI JAMIL ALAWI; ZA HOLDING COMPANY, LLC,

*Defendants-Appellees*.

No. 16-1988

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-13254—Avern  Cohn, District Judge.

Decided and Filed:  March 6, 2017[*]

Before:  DAUGHTREY, SUTTON, and DONALD, Circuit Judges.

---

## COUNSEL

**ON BRIEF:**  Daniel E. Chapman, Kimberly A. Cochrane, THE TROY LAW FIRM, Troy, Michigan, John J. Cooper, COOPER LAW FIRM, PLLC, Troy, Michigan, for Appellants.  Mark A. Hopper, DELOOF, HOPPER, DEVER, WRIGHT & MILLIMAN, PLLC, Ann Arbor, Michigan, for Appellees.

---

[*]This decision was originally filed as an unpublished opinion on March 6, 2017.  The court has now designated the opinion for full-text publication.

———————

**OPINION**

———————

SUTTON, Circuit Judge.   What started out as a landlord-tenant dispute has become a lawsuit under the Racketeer Influenced and Corrupt Organizations Act (RICO).   Mariah Wall, Christopher Boston, and Craig Mulhinch allege that Zaki Jamil Alawi and his companies committed federal wire, mail, and bank fraud by mishandling the security deposits the plaintiffs provided for their rental units.   Because the plaintiffs did not allege a cognizable injury and because the complaint does not contain the "particularity" needed to allege fraud, Fed. R. Civ. P. 9(b), the district court dismissed the federal claims with prejudice.   It opted not to exercise its discretionary jurisdiction over the state law claims and dismissed them without prejudice. We affirm.

Between 2012 and 2014, Wall, Boston, and Mulhinch rented rooms from Alawi and his companies:  ZA Holding Company and Michigan Rental.   Alawi and his companies (together, Alawi), collected roughly $2550 in security deposits from the three plaintiffs when they agreed to lease rooms in his buildings.   The plaintiffs lived in Alawi's properties while attending the University of Michigan.   When they moved out, they received their security deposits back, minus small deductions—uncontested by the plaintiffs—that Alawi withheld to cover minor damages to the properties.

What seemed to be an unexceptional, indeed pedestrian, landlord-tenant relationship had a potential wart, say the plaintiffs.   Michigan law requires landlords to handle security deposits in certain ways, including by depositing them in a properly regulated financial institution and by providing the address of that institution to the tenant.   The plaintiffs came to believe that Alawi did not comply with these requirements.

The plaintiffs sued Alawi on behalf of a putative class of six years' worth of tenants, alleging violations of RICO and Michigan state law to the tune of $6.6 million.   The crux of the complaint is that Alawi violated two requirements of Michigan landlord-tenant law:  He failed to place the security deposits in a properly regulated bank, and he failed to include the address of

the Michigan Commerce Bank on the lease. The complaint pleads a RICO violation on the grounds that Alawi was not entitled to hold security deposits at all (given these alleged breaches of Michigan law), and that knowingly taking security deposits anyway constituted a pattern of federal wire, mail, and bank fraud. The state-law claims alleged violations of Michigan's Landlord and Tenant Relationships Act, statutory conversion, common law conversion, violations of Michigan's Consumer Protection Act, and unjust enrichment.

Alawi moved to dismiss. Before ruling on the motion, the district court (generously) gave the plaintiffs an opportunity to file a supplemental "RICO Case Statement"—a fill-in-the-blank outline of each element of a RICO claim.

But their response did not quell the district court's concerns about the complaint. The court held that the plaintiffs lacked Article III standing to file the complaint because they failed to articulate any concrete injury. It held that the absence of any "injury to business or property" precluded the plaintiffs from stating a civil RICO claim. R. 26 at 10. And it held that the allegations in the complaint were too vague to meet the particularity requirement of fraud allegations under Civil Rule 9(b). The court dismissed the RICO claim with prejudice and declined to exercise supplemental jurisdiction over the state law claims. It also rejected the defendants' motion for sanctions as well as the plaintiffs' request for attorney's fees due to the burden of having to defend the motion for sanctions.

Plaintiffs appeal two rulings: the dismissal of their RICO claim and the denial of their request for attorney's fees.

The district court was correct on each front.

The district court had ample grounds for rejecting the RICO claim as a matter of law. First of all, the plaintiffs lack standing to bring the claim. To cross the gateway to an Article III court, a plaintiff must allege: (1) "an injury in fact"; (2) "a causal connection" between the alleged injury and the defendants' conduct—that "the injury . . . [is] fairly traceable to the challenged action . . . and not the result of the independent action of some third party not before the court"; and (3) redressability—that the injury will "likely . . . be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations omitted).

Bare-bone allegations by themselves will not suffice. *See In re Wingerter*, 594 F.3d 931, 945 (6th Cir. 2010). "[A] complaint must state a plausible claim that the plaintiff has suffered an injury in fact" and that the other elements of standing are satisfied. *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016).

Measured by these requirements, the plaintiffs come up short—in particular because they cannot satisfy the injury-in-fact requirement. They gave Alawi a security deposit before moving in and received the security deposit back upon moving out, minus some unchallenged deductions for damages. That sequence of events does not establish an injury in fact. The plaintiffs got just what Alawi promised in terms of dollars and cents. Nor may one establish an injury in fact merely by identifying a violation of state landlord-tenant law in the absence of actual damage. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). The claimant must connect the violation to a concrete injury in fact. Notably, the Michigan law does not even purport to identify any injury flowing from the alleged violations.

Plaintiffs' theories of injury, now offered on appeal, confirm this conclusion. One theory: If Alawi was not entitled to take a security deposit, as the complaint alleges, each plaintiff is entitled to a full refund without any deductions for damage. The other theory: The plaintiffs lost the time value of the security deposits, as they could have spent or invested the $800+ that each of them gave to Alawi during the tenancy. But they ignore the reality that they still received back just what they gave, consistent with the rental agreement. The idea that a tenant—least of all a college student—could move into a rental apartment *without* paying a security deposit is quite implausible. And plaintiffs point to no case law suggesting that they could have lived in these apartments without paying a security deposit. All of this takes us back to where we and Judge Cohn started: Plaintiffs have not identified any injury in fact that arose from these allegations.

Second, for comparable reasons, there is no RICO injury either. In order to bring a RICO claim, plaintiffs must show that illegal racketeering activities "injured [them] in [their] business or property." 18 U.S.C. § 1964(c); *see id.* § 1962; *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 558–59 (6th Cir. 2013) (en banc). In the absence of an injury of any kind, the

plaintiffs cannot show an injury within the meaning of the statute. The district court correctly dismissed the claim for this reason too.

Third, the complaint does not satisfy the pleading requirements of Civil Rule 9(b). The plaintiffs point to wire, mail, and bank fraud as Alawi's predicate acts of "racketeering activity" under RICO. 18 U.S.C. § 1961(1). To file a fraud claim, a plaintiff must state with "particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this requirement, the plaintiff must allege (1) "the time, place, and content of the alleged misrepresentation," (2) "the fraudulent scheme," (3) the defendant's fraudulent intent, and (4) the resulting injury. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007); *see United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 880–81 (6th Cir. 2017).

For present purposes, the complaint has two flaws. There is no allegation of a misrepresentation, and the alleged "fraudulent scheme" is not "plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiffs allege that, at some point after they signed the lease agreements, Alawi moved their security deposits from the Michigan Commerce Bank. And the plaintiffs say that Alawi represented, on the lease agreements, that the security deposits would be deposited at the Michigan Commerce Bank. But that would be a *mis*representation only if Alawi never put the deposits there, not if he moved the deposits around later (as Michigan law permits). *See* Mich. Comp. Laws § 554.604.

The complaint and RICO case statement omit any claim that Alawi never put the deposits where he said he would. All that the plaintiffs say is that their security deposits "were or were not deposited at Michigan Commerce Bank." R. 1 at 13. But that's not an allegation of a misrepresentation. It's not indeed a factual claim at all. It's a statement of two contradictory facts, making it a statement of nothing at all under a venerable principle of logic—the law of the excluded middle. Aristotle, *Metaphysics* bk. IV, pt. 7, *available at* http://classics.mit.edu /Aristotle/metaphysics.4.iv.html ("[T]here cannot be an intermediate between contradictories."). In the absence of any factual assertion that Alawi did something other than what he said he would, the plaintiffs cannot describe the "time, place, and content of the alleged misrepresentation" as Civil Rule 9(b) requires. *Bledsoe*, 501 F.3d at 504.

Making matters worse for the plaintiffs, the alleged "fraudulent scheme" is implausible on its face. *Twombly*, 550 U.S. at 570. The apparent idea is that Alawi knew he had not complied with the Michigan landlord-tenant laws, collected security deposits anyway, then commingled the security deposits with his own funds. What's implausible about this is that the only concrete violation of the Michigan Landlord and Tenant Relationships Act that plaintiffs have pointed to is Alawi's failure to include the *address* of the Michigan Commerce Bank on the lease document. Mich. Comp. Laws § 554.603 ("A landlord shall not require a security deposit unless he notifies the tenant . . . [of] the name and address of the financial institution" where he'll place the deposit). Even if this omission violated the letter of Michigan law, it is beyond us how this omission could have misled anyone, much less amounted to a fraudulent scheme. It's undisputed that the Michigan Commerce Bank was a properly regulated financial institution with *only one location*.

Nor can we see what Alawi could have gained from the omission. He collected security deposits in permissible amounts, used them in permissible ways, and returned them on time and without any contested deductions. *See* Mich. Comp. Laws § 554.604 ("A landlord may use the moneys so deposited for any purposes he desires if he deposits with the secretary of state a cash bond or surety bond . . . ."). That's not much of a "scheme." That Alawi intended to use this trivial omission to defraud his tenants into paying security deposits to which he was not entitled is not even "conceivable," much less "plausible." *Twombly*, 550 U.S. at 570.

One last thing. The *plaintiffs* request attorney's fees because they prevailed in one way before the district court: The court (kindly) did not grant the defendants' motion for sanctions against the plaintiffs. Fed. R. Civ. P. 11(c)(2). That is the one difficult issue in this case. It's difficult not because of anything the district court did. It of course quite properly denied fees to the plaintiffs on this ground, all way within its sound discretion. *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 269 (6th Cir. 2008). What's difficult is whether *we* should *sua sponte* impose sanctions on the *plaintiffs* for bringing such a frivolous appeal. We will not impose such sanctions today. But plaintiffs' counsel would be well advised to consider more carefully in the future what amounts to a colorable ground for appeal and what does not.

For these reasons, we affirm.