NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0358n.06

No. 24-3275

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 22, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JOHN A. JAMES; AARON TIFFANY; CHRISTOPHER KOPF, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) )) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, aka Norfolk Southern Corporation, et al., | ) ) ) | OPINION |
| Defendants-Appellees. | ) ) | |

Before: GILMAN, STRANCH, and LARSEN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Plaintiffs John James, Aaron Tiffany, and Christopher Kopf are former employees of Norfolk Southern Railway (NSR) whose terminations were upheld in arbitrations under the Railway Labor Act (RLA). They bring fraud claims regarding the arbitrator selected to adjudicate their terminations, naming as defendants: NSR; the Brotherhood of Locomotive Engineers and Trainmen (BLET), a national railway labor union; and a BLET subpart, Norfolk Southern Northern Lines/CF&E General Committee of Adjustment (GCA) (together with BLET, the "Union Defendants"). They also bring claims that the Union Defendants breached the duty of fair representation. Plaintiffs James and Tiffany additionally bring a whistleblower claim against NSR under the Federal Railroad Safety Act (FRSA), alleging that it discharged them in retaliation for not falsifying their time records. The district court dismissed the fraud and duty of fair representation claims entirely and granted summary judgment

to NSR on the FRSA claim. The Plaintiffs appeal those decisions. BLET and GCA moved to dismiss this appeal and for sanctions against the Plaintiffs.

We **GRANT in part and DENY in part** the motion to dismiss and **DENY** the motion for sanctions. Because the fraud and duty of fair representation claims are insufficiently pled, we **AFFIRM** the district court's dismissal of those claims. Because the Plaintiffs do not present evidence giving rise to a genuine dispute of material fact on their retaliation claim, we **AFFIRM** the district court's grant of summary judgment.

## I.   BACKGROUND

This appeal concerns the district court's grant of a motion to dismiss, a motion for judgment on the pleadings, and a motion for summary judgment. We relay the facts as alleged in the Plaintiffs' Complaint and as presented in the summary judgment record.[1] We construe the Complaint in the light most favorable to the Plaintiffs and construe all evidence in the summary judgment record in the Plaintiffs' favor, in accordance with the applicable standards of review. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.   Facts

In 2017, NSR terminated two of the Plaintiffs: James, a train conductor, and Tiffany, a train engineer. Both had been employed by the railway for almost 20 years. In the summer of 2017, they worked together at the South Bend yard office on the "B55 job," which required them to service industry train cars and then deliver the cars to industry warehouses. James and Tiffany worked on the B55 job five days per week, and each day involved different tasks, leading to

---

[1] The allegations of the Complaint are considered in analyzing the motions to dismiss and for judgment on the pleadings. The facts adduced during discovery are addressed in the summary judgment analysis.

variances in their daily shift durations. Their immediate supervisor on the B55 job was Trainmaster Thomas Moon. Moon instructed James and Tiffany to stay on their shift for at least six hours per day throughout the B55 job. If they finished their tasks in less than six hours, they were to remain on site until six hours had passed.

James and Tiffany were represented by a local division of the national union, BLET. BLET's national branch had negotiated and entered into a collective bargaining agreement (CBA) with NSR on behalf of its members. Pursuant to the CBA, NSR would pay its organized employees for a minimum of eight hours of work per shift, even if they worked only six hours.

NSR used a computer timekeeping system that required employees to individually clock in at the beginning of each shift and clock out, or "tie up," at the end of each shift. Employees would log on using their credentials, follow computer prompts, manually enter the tie up time, and then submit a form to tie up. James and Tiffany claimed that NSR's timekeeping system automatically subtracted two minutes from the tie up time. Tiffany testified at his deposition that, "When you're on the initial tie up screen, there's a computer time in the upper left-hand corner, which is the real time. And when you put it in, when you submit it, it'll back it up two minutes from that original computer time up in the corner." R. 92-3, Tiffany Dep., PageID 1118.

On July 26, James and Tiffany clocked into work on time at 12:01 p.m. for their B55 job shifts. The two assessed and completed their B55 job tasks for the day sometime before 3:40 p.m. In order to provide and report their minimum of six hours, they went to a crew room on site and waited approximately two and a half hours before leaving. Tiffany testified that he tied up at 6:01 p.m., and James testified that he tied up at 6:02 p.m., both completing a six-hour shift. But NSR's timekeeping records indicate that Tiffany and James tied up at 5:59 p.m. and 6:00 p.m., respectively.

That night, Moon and James had the following text exchange about James's and Tiffany's shift duration:

> **Moon:** You're not protecting your job.  Check the clock
>
> **James:** I put off at 603 I thought.  Thomas I wouldn't screw u like that Arron [Tiffany] has his at 600pm….  And I told him no to wait another minute so it would be 601pm for him
>
> **Moon:** Ok well [the timekeeping system] is showing 559p and 600p respectively
>
> **James:** S--t….  I give you my word it won't happen again.  I could have sworn I changed my time to 603p because of the 2 minutes delay.  I got distracted by a phone call from my mom
>
> I know… The 2 minute delay.  What can I do to make it right with u Tom?
>
> **Moon:** I cannot stop automated reports from generating.  I have been questioned in the past from people in corporate..  I think the baby has already been born, we will see how it goes.
>
> **James:** I know.  We got back to the office at 340pm and set at the office until time to put off.  I hope u know I would never disrespect you like that on purpose.  Usually I put off first and I got distracted.  No excuses.

On the same day, NSR put James and Tiffany off duty.  On July 31, NSR informed James and Tiffany that it was investigating them for "failure to follow verbal instructions of Trainmaster T. Moon when [they] marked off after being on duty for less than 6 hours[.]"  R. 92-4, Dep. Exs., PageID 1234.  Pursuant to the CBA, the two were afforded an investigative hearing with NSR.

The hearing occurred on August 3, 2017, where an NSR trainmaster, Matthew Myers, acted as the hearing officer.  James, Tiffany, and Moon attended the hearing and testified, and James and Tiffany brought a BLET representative.  In support of NSR's discipline of James and Tiffany, Myers introduced the text messages between Moon and James from the evening of July 26.  Two weeks later, on August 17, Myers notified James and Tiffany that he found them responsible for "failure to follow verbal instructions" and tying up after being on duty for less than six hours on July 26 and dismissed them.  *Id.* at PageID 1235, 1331.

Under the RLA, 45 U.S.C. § 157, controversies between railroad carriers and organized employees that cannot be resolved in mediation can, by agreement of the parties, be submitted to arbitration overseen by the National Mediation Board (NMB), an independent federal agency. The RLA provides that the arbitration will go before a three-member panel, referred to as a Public Law Board (PLB). *Id.* Each party chooses one arbitrator for the panel, and both parties agree to a third, neutral arbitrator, who acts as the chair of the PLB. *Id.*

In this case, in accordance with the provisions of the RLA and the CBA, BLET applied for arbitration before a PLB to adjudicate the discharges of James and Tiffany. *See id.* Under the Act and the Agreement, the three-member PLB was to include a "neutral" arbitrator of the parties' choice; either the railway or BLET could reject any proposed neutral arbitrator. *See id.* The disputes proceeded to arbitration, and the neutral arbitrator agreed to by the Union and NSR for both arbitrations was David N. Ray, whose career included service as Vice President of Labor Relations at NSR. The Complaint alleges "on information and belief" that Ray had an "undisclosed conflict of interest" because he presumably had a pension, retirement benefits, and stock holdings with NSR. R. 1, Compl., PageID 6-7. Plaintiffs allege that BLET and GCA knew about Ray's conflict of interest but accepted him because BLET received political benefits, specifically that Ray would "look the other way in 'quietly' agreeing to the denials of appeals from divisions [] whose local chairmen" did not vote for BLET General Chairman Dewayne Dehart. *Id.* at PageID 7. The three-member PLB ultimately upheld NSR's termination of James and Tiffany for failure to follow verbal instructions and stay on shift for six hours. This suit followed.

The other plaintiff in this case, Kopf, was terminated from NSR for events unrelated to James's and Tiffany's timekeeping.[2] Kopf requested an investigative hearing and then applied for arbitration before a PLB. His hearing was held on December 18, 2017, and soon after, NSR notified Kopf that he was being discharged. BLET filed a grievance, requesting arbitration on Kopf's behalf, and Ray was selected as the neutral arbitrator on the PLB. Kopf notified BLET that he did not want to have his arbitration before Ray, so his case was transferred, which he alleged caused a minimum of 17-months' delay in arbitration. Kopf alleges that "the collusion, fraudulent, corrupt and planned use of David Ray caus[ed] [him] great emotional distress[] [and] lost income." *Id.* at PageID 20.

### B. Procedural History

On June 28, 2019, Tiffany, James, and Kopf filed a Complaint against GCA, BLET, NSR, and Ray, alleging four counts relevant to this appeal.[3] Count I alleged that all Defendants committed fraud by acting in concert and agreeing to Ray's position on the PLB to hear these disputes. Count II alleged a breach of the duty of fair representation (DFR) against BLET and GCA for selecting Ray as an arbitrator in these disputes. Count III alleged retaliation under FRSA against NSR for terminating Tiffany and James for their timekeeping practices. Count IV alleged fraud and breach of the RLA's duty of fair representation against all Defendants for terminating Kopf and selecting Ray as an arbitrator on his PLB.[4]

---

[2] Kopf, a locomotive engineer at NSR, delivered trains to Detroit Edison and was required to give Detroit Edison his driver's license for up to 20 minutes at a time when he was on site. Kopf refused to show Detroit Edison his driver's license, purportedly because he was concerned about identity theft; he was charged by NSR with failure to follow instructions.

[3] The Complaint contained a fifth count, alleging retaliation and breach regarding a Department of Labor settlement agreement against NSR. The Plaintiffs voluntarily dismissed that claim, and it is not at issue on appeal. The Plaintiffs also voluntarily dismissed Ray from the action in the district court, and he is not a party to this appeal.

[4] Kopf alone brings a claim of tortious interference against the Union Defendants, relying on the factual allegations regarding Ray's bias. Though Kopf's claim is styled as tortious interference, throughout this litigation, the Plaintiffs

On August 29, NSR moved to dismiss the fraud claim against it. On March 3, 2020, the district court granted NSR's motion to dismiss, finding that the Plaintiffs did not meet the heightened pleading standards for fraud. On May 1, the Union Defendants moved for judgment on the pleadings on all counts against them. The Plaintiffs, in their opposition brief to the motion for judgment on the pleadings, requested that the court "permit them to amend their complaint as proposed in the attached Proposed Amended Complaint," and attached an amended complaint. R. 50, Opp. to Mot., PageID 420. The Plaintiffs did not file a motion to amend their Complaint at that time.

On November 16, the court granted the Union Defendants' motion for judgment on the pleadings. The court dismissed the fraud claim against them with prejudice, explaining that its Order granting NSR's motion to dismiss "already [] held the complaint's fraud allegations [] inadequate" and that "[t]hose same conclusory allegations are no more sufficient to state fraud claims against the Union Defendants than they were to support a fraud claim against [NSR]." R. 56, Order, PageID 673. The court dismissed the DFR claim without prejudice, explaining that the Plaintiffs might have "a case to be pled" in a complaint "as yet undrafted" and inviting them to move for leave to file an amended complaint. *Id.* at PageID 673, 676. Regarding the Plaintiffs' request in their brief to amend, the court explained that it would decline to "grant leave now to file an amended complaint pending filing of a further motion with the proposed complaint attached." *Id.* at PageID 673.

On January 6, 2021, the Plaintiffs filed a motion for leave to amend their Complaint, attaching a proposed amended complaint that added allegations about BLET's involvement in

---

have argued and the district court has considered only whether BLET committed fraud and breached the duty of fair representation as to Kopf. Any separate claim of tortious interference is thus abandoned. *See United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022).

selecting Ray as an arbitrator. In their opposition briefing, the Union Defendants noted that "[c]onspicuously absent" from the amended complaint was "any mention of the GCA." R. 59, Opp. to Mot., PageID 705. The Plaintiffs conceded that "the GCA is correct. Plaintiffs did not name it in any count of the complaint. Plaintiffs did not intend on including the GCA in the Amended Complaint and its inclusion in the caption is a clerical error." R. 60, Reply in Supp., PageID 713. The court entered an Order on March 8, 2021 denying the Plaintiffs' motion for leave to amend, noting that the parties concurred in the denial of leave to amend.

On May 18, 2021, a status conference was held, the first since the court had granted the Union Defendants' motion for judgment on the pleadings and denied the Plaintiffs' motion to amend. The Union Defendants asked the court to dismiss the claims against them with prejudice because the court had denied the Plaintiffs leave to amend their Complaint. Plaintiffs' counsel agreed that the claims against GCA were "moot because [the parties] dismissed them." R. 78, Off. Tr., PageID 795. The court dismissed GCA with prejudice, noting, "I'm just going to dismiss [BLET] as well with prejudice; therefore, it's tidy; it's neat; it's put together; it's preserved for appeal." *Id.* at PageID 810. Plaintiffs' counsel requested the court "go back and look at its notes," because he thought the court had intended to dismiss BLET without prejudice, and he requested the opportunity to have "unilateral discovery" on the claims against BLET. *Id.* The Court refused. Counsel stated that he still intended to amend the Complaint regarding the claims against BLET. After the status conference, the court entered a minute Order that stated, "Upon agreement of parties, the [Union Defendants] dismissed [sic] with prejudice." Minute Order, May 18, 2021.

The only claim that remained was James and Tiffany's FRSA claim asserting that NSR retaliated against them for their timekeeping practices. NSR and the Plaintiffs engaged in discovery. In October 2023, NSR moved for summary judgment on the FRSA claim. The court

granted NSR's motion, finding that James and Tiffany had not raised a genuine dispute of material fact in support of a FRSA retaliation claim.

This appeal timely followed. Plaintiffs challenge the district court's dismissal of Counts I, II, and IV against NSR; the grant of judgment on the pleadings on Counts I, II, and IV to the Union Defendants; the denial of the Plaintiffs' leave to amend their Complaint; and the grant of summary judgment on Count III to NSR. The Union Defendants moved to dismiss the appeal of any claims against them for lack of jurisdiction and waiver and filed a complementing motion for sanctions.

## II.   ANALYSIS

### A.   Fraud and Duty of Fair Representation Claims (Counts I, II, and IV)

The Plaintiffs appealed the judgment on the fraud and DFR claims. The Union Defendants moved to dismiss the appeal for lack of jurisdiction and waiver, and they moved for sanctions.

#### 1.   Motion to Dismiss

The Union Defendants argue that the Plaintiffs waived all claims against them. "[A] party waives an argument only if it 'expressly abandon[s]' an issue." *United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022) (quoting *United States v. Denkins*, 367 F.3d 537, 542 (6th Cir. 2004)). A party must take some action to waive an argument, either by making an express statement or failing to raise the argument in its first brief on appeal. *Id.* at 375. Waiver is not jurisdictional, but instead a rule of procedure, and we have discretion to address issues "presented with sufficient clarity and completeness." *Pinney Dock & Transp. Co. v. Penn. Cent.*, 838 F.2d 1445, 1461 (6th Cir. 1999). We address GCA's and BLET's waiver arguments separately.

GCA argues that the Plaintiffs waived their claims against it in a series of statements in the district court. When the Plaintiffs moved for leave to file an amended complaint on January 6, 2021, they attached a new proposed amended complaint that did not include any allegations against

GCA. Plaintiffs' briefing below conceded that "Plaintiffs did not intend on including the GCA in the Amended Complaint." R. 60, PageID 713. At the May 18 status conference, Plaintiffs' counsel conceded that the parties "dismissed the [GCA]"; that "the [GCA] is moot because we dismissed them"; and that they agreed verbally to "dismiss the GCA." R. 78, PageID 794, 795, 796. Before this court, Plaintiffs' counsel stated that Plaintiffs did not "ma[ke] any real allegations against [GCA]," "may have accidentally named them," and had "no briefing against them." Oral Arg. at 28:00.

The Plaintiffs' statements in briefing and their arguments before the court below and this court on appeal establish express relinquishment of GCA as a party to this action. *See Russell*, 26 F.4th at 374. GCA is therefore not a proper party to this appeal, and we grant GCA's motion to dismiss.

BLET moves to dismiss this appeal on the basis of waiver and for lack of jurisdiction. BLET first argues that the Plaintiffs' failure to list the May 18, 2021 Minute Order dismissing Counts II and IV with prejudice in their notice of appeal deprives this court of jurisdiction to consider the claims. The Plaintiffs' notice of appeal designated specific parts of the district court's judgment below for appeal, including "[o]rders 37, 38, 56 and related Judgements,"[5] but not the May 18 Order. R. 106, PageID 1682. This omission, BLET contends, is fatal because the law requires a plaintiff to designate the order challenged on appeal in the notice of appeal.

Federal Rule of Appellate Procedure 3(c)(1) requires a notice of appeal to "designate the judgment—or the appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). This rule is jurisdictional. *Smith v. Barry*, 502 U.S. 244, 248 (1992). Before 2021, the doctrine of

---

[5] These orders are the grant of NSR's motion to dismiss and grant of judgment on the pleadings to the Union Defendants.

*expressio unius*—the inclusion of one thing is the exclusion of another—might have instructed this court to consider only the enumerated orders in the notice of appeal. But a new provision, Rule 3(c)(6), was added to Rule 3 in 2021 to clarify that an appellant may "expressly stat[e]" that the notice of appeal is limited to a designated "part of a judgment or appealable order," but "[w]ithout such an express statement, specific designations do not limit the scope of the notice of appeal." Fed. R. App. P. 3(c)(6). The notes to the amendment address the basis of this revision, explaining that

> some notices of appeal designate both the judgment and some particular order that the appellant wishes to challenge on appeal. A number of courts, using an *expressio unius* rationale, have held that such a designation of a particular order limits the scope of the notice of appeal to the particular order, and prevents the appellant from challenging other orders that would otherwise be reviewable, under the merger principle, on appeal from the final judgment. These decisions inadvertently create a trap for the unwary.

Fed. R. App. P. 3, Notes.

BLET is relying on an interpretation of Rule 3(c)(1) that has since been addressed by the addition of Rule 3(c)(6). Rule 3(c)(6) instructs that, absent an express statement, the specific designations of orders 37, 38, and 56 should not limit the scope of the notice of appeal. *See* Fed. R. App. P. 3(c)(6). And the Plaintiffs' notice of appeal contains no express limiting statement, so the notice of appeal is not defective.

BLET also argues that it has "been out of this case for more than three years," and, instead of appealing, the Plaintiffs should have "request[ed] clarification from the District Court when the [minute] order was entered." D.E. 37, p. 8; D.E. 45, p. 7. That would have been a more appropriate procedure, but the Federal Rules of Appellate Procedure do not require a party to seek clarification or re-review from the district court on a judgment before appealing it. *See* Fed. R. App. P. 3. And

one effect of the final judgment rule is that a challenged, merged order might be many years old—this effect does not strip our court of jurisdiction. *See* 28 U.S.C. § 1291.

BLET next argues that the Plaintiffs waived their claims against it because the May 18, 2021 Order entered following the status conference concludes that the remaining claims against BLET and GCA were dismissed with prejudice "upon agreement of the parties." BLET asserts that this statement shows that the Plaintiffs abandoned their claims against it. The Plaintiffs agree that if they voluntarily dismissed the claims, the claims are waived, but assert that the status conference transcript "makes it very clear that [they] did not agree with dismissing the BLET at all, and certainly not with prejudice." D.E. 42, p. 6.

The May 18 Order and the status conference transcript are ambiguous as to whether the Plaintiffs expressly waived their claims against BLET, and Plaintiffs consistently argue their claims against BLET on appeal. Waiver is not a jurisdictional bar, and this court has discretion to address issues clearly presented on appeal. *Pinney Dock & Transp. Co.*, 838 F.2d at 1462. We therefore analyze the Plaintiffs' legal assertions below.[6]

### 2. Fraud

The district court disposed of the fraud claim in orders granting both a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings. The standard of review for a Rule 12(c) judgment on the pleadings and for a Rule 12(b)(6) judgment as a matter of law are the same. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). These dismissals are reviewed de novo, taking all well-pleaded material

---

[6] The Union Defendants accompany their motion to dismiss with a motion for sanctions, including fees and costs pursuant to Federal Rule of Appellate Procedure 38, which allows sanctions for a frivolous appeal. *See* 28 U.S.C. § 1927 (allowing courts to require an attorney to pay attorney's fees when he "so multiplies the proceedings in any case unreasonably and vexatiously"). Because BLET's presence in this appeal is arguable, we deny the motion for sanctions.

allegations as true, and upholding them only if the moving party is clearly entitled to judgment as a matter of law. *Id.* We consider only facts in the pleadings and any exhibits in the record if those exhibits are referenced or described in the pleadings and are central to the claims therein. *Bassett*, 528 F.3d at 430.

The fraud claim pled is ambiguous and could be a common law fraud claim under Ohio law or a fraud claim authorized by the RLA's judicial review provision. *See* 45 U.S.C. § 153, First (q). Under the RLA, a PLB's findings and order "shall be conclusive on the parties." *Id.* § 153, First (p). A PLB's order may be challenged in federal district court, but the court's "judicial review of the arbitral decision is limited." *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 304 (1989). The district court may set aside a PLB's decision only for "failure of the [PLB] to comply with the requirements of [the RLA], for failure of the order to conform, or confine itself, to matters within the scope of the [PLB's] jurisdiction, or for fraud or corruption by a member of the [PLB] making the order." 45 U.S.C. § 153, First (q).

The district court construed the fraud claim as asserting both RLA and common law fraud and dismissed it. The Plaintiffs have since specified that they intended to raise only a common law fraud claim and conceded that: "[t]he District Court did rule that Plaintiff-Appellants' claims do not meet the standard for review of an RLA claim, but Plaintiff-Appellants did not and do not argue otherwise." Reply Br. at 8 n.2. We therefore construe the claim as solely a common law fraud claim.[7]

In Ohio, common law fraud requires the following six elements:

(1) a representation or, where there is a duty to disclose, a concealment of fact;
(2) which is material to the transaction at hand; (3) made falsely, with knowledge

---

[7] In some cases, parties have disputed whether the RLA preempts common law fraud claims. *Franke v. Norfolk S. Ry. Co.*, No. 21-3848, 2023 WL 3413919, at *6 (6th Cir. May 12, 2023). The Defendants did not raise the preemption issue in their briefing on appeal, so we do not address it here.

of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) an injury proximately caused by the reliance.

*Watson v. City of Cleveland*, 202 F. App'x 844, 857 (6th Cir. 2006) (citing *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1083 (Ohio 1991)). Federal Rule of Civil Procedure 9(b) imposes heightened pleading requirements for complaints alleging fraud. To allege fraud under Rule 9(b), a plaintiff must allege "(1) 'the time, place, and content of the [fraudulent conduct],' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 883 (6th Cir. 2021) (quoting *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017)). Plaintiffs pleading fraud must identify "the who, what, when, where, and how" of their fraud claim. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)). The parties dispute whether Rule 9's heightened requirements apply in this case, but under any pleading standard, the Plaintiffs' fraud claim fails.

The Plaintiffs' fraud claim rests on their assertion that NSR and BLET colluded to select Ray as an arbitrator because he was biased in favor of NSR. They allege that, in return, BLET received political benefits for its local chairman. The Plaintiffs do not seek to set aside the PLB's judgment, our review of which would be limited under the RLA. *See* 45 U.S.C. § 153, First (p). Instead, they seek lost wages, benefits, and reinstatement; those requested damages result from their terminations, challenged before the PLB. Under Ohio law, Plaintiffs must also plausibly allege that the fraud they have pled proximately caused their terminations. *See Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003). To plead the proximate cause element of fraud under Ohio law, the Plaintiffs must state that "the fact allegedly misrepresented . . . caused their harm." *Id.*

The Complaint contained no allegations of a causal connection between Ray's bias and Plaintiffs' terminations, nor did it allege why Plaintiffs would have been successful at arbitration in the absence of Ray's claimed bias. The two other arbitrators on James and Tiffany's PLB, including the other arbitrator chosen by the Union, found their terminations justified. While Kopf did not proceed to arbitration before Ray, the Complaint does not allege that a neutral PLB would have found his termination unjustified and reinstated him. The Complaint failed to plausibly plead the proximate cause element necessary to show common law fraud.

Because the Plaintiffs' Complaint does not set forth a plausible allegation of fraud by NSR and BLET that proximately caused their terminations, we affirm the district court's dismissal of the fraud claim.

### 3.     Duty of Fair Representation

The Plaintiffs argue that the district court erred when it dismissed their claim that BLET breached the duty of fair representation implicit in the RLA. We review this dismissal de novo, taking all well-pleaded material allegations as true, and upholding it only if BLET is clearly entitled to judgment as a matter of law. *See Fritz*, 592 F.3d at 722. The RLA states that

> [w]henever a controversy shall arise between a carrier or carriers and its or their employees which is not settled either in conference between representatives of the parties or by the appropriate adjustment board or through mediation . . . such controversy may, by agreement of the parties to such controversy, be submitted to the arbitration of a board of three (or, if the parties to the controversy so stipulate, of six) persons[.]

45 U.S.C. § 157, First. Since 1944, courts have held that the RLA implies a union's DFR. *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 207 (1944); *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010). This duty requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion

with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

To succeed on a DFR claim, plaintiffs must show that the duty applies; that the union breached the duty; and that the breach caused the plaintiffs' injury. *Merritt*, 613 F.3d at 619; *Brown v. UAW*, 689 F.2d 69, 71 (6th Cir. 1982). The DFR "applies in all contexts of union activity, including contract negotiation, administration, enforcement, and grievance processing." *Merritt*, 613 F.3d at 619. The duty does not require unions to arbitrate every grievance in the first instance, but when a union is involved in an arbitration, the duty applies. *Vaca*, 386 U.S. at 190. When the duty applies, "simple negligence or mere errors in judgment" will not constitute a breach. *Walk v. P.I.E. Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992). "Only those important or tactical decisions made by a union official at arbitration that exhibit arbitrary or discriminatory conduct, or actions taken in bad faith, constitute breach of a duty of fair representation." *Id.* at 1326-27.

In addition to showing the duty's applicability and a breach, plaintiffs asserting a DFR claim must "demonstrate a causal connection between the union's wrongful conduct and their injuries." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998); *Brown*, 689 F.2d at 71; *see also Int'l Bhd. of Elec. Workers v. Foust,* 442 U.S. 42, 48-49 (1979) ("The fundamental purpose of unfair representation suits is to compensate for injuries *caused by* violations of employees' rights." (emphasis added)). For example, in *Brown v. UAW*, we explained that plaintiffs must show a causal connection between a union's actions or inactions and their injuries to state a DFR claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. 689 F.2d at 71. In *Brown*, the plaintiffs asserted that their union failed to monitor their employer's payments into a pension fund, and as a result, the pension fund had insufficient money. *Id.* at 70.

But the record indicated that even if the union had fulfilled the alleged duty to monitor the payments, the union could not have forced the failing employer to make larger contribution payments. *Id.* at 71. Thus, the plaintiffs' DFR claim failed for lack of causation. *Id.* *Brown* teaches that plaintiffs cannot succeed on a claim that their union breached the duty of fair representation unless they plead and show causation. *See id.*; *see also Vaughn*, 604 F.3d at 709.

The Rule 8 pleading requirements apply to DFR claims. *See Swanigan v. FCA U.S. LLC*, 938 F.3d 779, 783, 785 (6th Cir. 2019). To plead a DFR claim, therefore, plaintiffs must allege that the duty applies in the first instance. *Merritt*, 613 F.3d at 619. They must then allege facts from which a plausible inference of the breach of the duty flows. *See* Fed. R. Civ. P. 8; *Swanigan*, 938 F.3d at 783, 786. They must also plausibly allege that, absent the union's actions or inactions, they would not have been injured. *See Vaughn*, 604 F.3d at 709.

In this case, the Plaintiffs alleged that BLET breached the DFR by agreeing to Ray as one of the arbitrators for their three member PLB because BLET knew that Ray's background included employment with NSR. The parties agree that the arbitrations before Ray arose pursuant to the RLA, so BLET owed the duty to the Plaintiffs in this case. The district court, in granting BLET judgment on the pleadings, concluded that the DFR claim did not satisfy Rule 8 as pled because the Union's alleged actions in selecting Ray as an arbitrator did not support a plausible inference of a breach of the duty.

We first address the DFR's causation requirement. Plaintiffs had to plead a plausible causal connection between BLET's wrongful conduct and their injuries—their terminations. *See Vaughn*, 604 F.3d at 709. The Plaintiffs made no mention of a causal connection in their Complaint, nor did they allege why they would have been successful at arbitration in the absence of BLET's alleged breach of the duty. James and Tiffany do not address the fact that two other arbitrators on

the PLB, including the other arbitrator chosen by the Union, found their terminations justified. Kopf does not allege that, absent Ray's bias, he would have been reinstated and entitled to backpay for the months that he was awaiting arbitration.

On appeal, moreover, the Plaintiffs challenge only the district court's conclusion that they did not allege which roles BLET played in selecting Ray as an arbitrator, a fact that Plaintiffs claim could establish BLET's breach. But this ignores that a breach of duty cause of action requires allegations of causation. Because the Plaintiffs failed to plead the requisite causal connection between the breach of the DFR and their terminations, we affirm the order granting BLET judgment on the pleadings on the Plaintiffs' DFR claim.

### B. Denial of Leave to Amend

The Plaintiffs argue that the district court's denial of their motion for leave to amend their Complaint was error. Federal Rule of Civil Procedure 15(a) requires that leave to amend a complaint "be freely given." A request for a court order granting leave to amend a complaint must be made through a motion. *Id.* "Courts tend to regard informal requests for court orders contained within other documents such as letters, opposition papers, or pleadings as insufficient to satisfy the motion requirement, although some courts may overlook such defects if the error is harmless." Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1191 (4th ed.); *see C & L Ward Bros., Co. v. Outsource Sols., Inc.*, 547 F. App'x 741, 744 (6th Cir. 2013) (holding that the district court did not abuse its discretion in denying leave to amend when the plaintiff "never presented the motion to amend in a manner that required its disposition"). We review denials of leave to file an amended complaint under the abuse of discretion standard. *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995).

The Plaintiffs first requested leave to amend their Complaint by statements made in a brief on June 15, 2020. In their brief opposing judgment on the pleadings, the Plaintiffs asked the court "to permit them to amend their complaint as proposed in the attached Proposed Amended Complaint," and attached a proposed amended complaint. R. 50, PageID 420. In its November 16, 2020 decision granting judgment on the pleadings, the court stated that it "decline[d] to grant leave now to file an amended complaint pending filing of a further motion with the proposed complaint attached." R. 56, PageID 673. On January 6, 2021, the Plaintiffs moved for leave to amend their Complaint and attached an amended complaint alleging the same new facts about Ray's past arbitrations as the amended complaint attached to their June 15, 2020 brief. On March 8, 2021, the court entered a non-document Order stating: "On review, *the parties concurring thereto*, it is hereby ORDERED THAT the Plaintiffs' motion for leave to amend their complaint (Doc. 58) be, and the same hereby is denied." Mar. 8, 2021 Order (emphasis added). Two months later, at a May 18 status conference, the court explained that it had denied the Plaintiffs' request to file an amended complaint in the March 8 Order because the proposed amended complaint was "wanting." R. 78, PageID 811. The Plaintiffs now argue that this Order was error because "the order failed to articulate any justification for the [d]istrict [c]ourt's denial." Appellant Br. at 49. We turn to the court's explanation of its ruling.

First, following Plaintiffs' request in their June 15, 2020 brief, the district court instructed the Plaintiffs to make a formal motion for leave to amend. The district court was not required to consider a request made in briefing. *See C & L Ward Bros., Co.*, 547 F. App'x at 744. The court, therefore, did not abuse its discretion in requiring the Plaintiffs to file a formal motion to request leave to file an amended complaint.

Second, the court, in its March 8, 2021 Order, found that the parties concurred in the denial of the motion to amend the complaint and further explained in the May 18, 2021 status conference that it found the proposed amended complaint "wanting." On appeal, the Plaintiffs do not challenge the district court's conclusions in the March 8 Order that the parties had concurred in the denial of the Plaintiffs' motion to amend or in the May 18 status conference that the court found the proposed amended complaint "wanting." The Plaintiffs do not state that they disagreed with the denial of the motion to amend, nor do they provide an argument that the district court abused its discretion in finding the proposed amended complaint "wanting." Instead, they argue only that the district court provided no justification for its denial of the motion. But the district court did provide reasons for the denial. Absent a challenge to the district court's reasoning, we affirm the Order denying the Plaintiffs' motion for leave to amend.

## C. FRSA Retaliation (Count III)

James and Tiffany argue that the district court erred in granting NSR summary judgment on their FRSA retaliation claim. FRSA is a whistleblower protection law. 49 U.S.C. § 20109(a); *see Norfolk S. Ry. Co. v. U.S. Dep't of Lab.*, No. 21-3369, 2022 WL 17369438, at *1 (6th Cir. Dec. 2, 2022). It provides protection against retaliation for railroad carrier employees:

> A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done . . . (2) to refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security; . . . or (7) to accurately report hours on duty pursuant to chapter 211.

49 U.S.C. § 20109(a). Courts employ a burden-shifting framework for FRSA claims at the summary judgment stage. *Consol. Rail Corp. v. U.S. Dep't of Lab.*, 567 F. App'x 334, 337 (6th Cir. 2014). To make a prima facie showing of retaliation under FRSA, an employee of a railroad

carrier must show that (1) he engaged in a protected activity; (2) the employer knew of the protected activity; (3) the employee suffered unfavorable personnel action; and (4) the protected activity was a contributing factor. *Id.* The employee bears the initial burden of showing this prima facie case by a preponderance of the evidence, after which the burden shifts to the employer to show by clear and convincing evidence that it would have taken the same adverse action absent protected behavior. *Id.*

In their FRSA claim, James and Tiffany argued that they engaged in protected activity when they refused to adjust their time entries to account for the alleged two-minute system backdating. They contended that NSR knew of their protected activity and terminated their employment because of it. In granting summary judgment to NSR on the FRSA claim, the district court found that James and Tiffany had not introduced evidence sufficient to raise a genuine dispute of material fact that they engaged in protected activity about which NSR knew and that led to their termination. The court concluded that, in any event, NSR had shown by clear and convincing evidence that it would have terminated James and Tiffany regardless of the purported protected activity. We review that grant of summary judgment de novo, asking whether James and Tiffany introduced sufficient material facts such that a jury could reasonably find in their favor. *See Lemon v. Norfolk S. Ry. Co.*, 958 F.3d 417, 418 (6th Cir. 2020).

James and Tiffany assert that they engaged in two distinct protected activities under FRSA: they refused to assist NSR's violation of the law, rules, and regulations governing railroad carriers under § 20109(a)(2); and they engaged in accurately reporting their hours pursuant to Chapter 211 under § 20109(a)(7). James and Tiffany state that they "could have easily avoided discipline by entering a falsely inflated [tie up] time by two minutes, so that when the crew management system

'backdated' the time, it still showed they worked six hours. They refused to falsely report their time." Appellant Br. at 30.

For purposes of addressing this claim, we simply assume that protected activity occurred, then ask whether NSR knew of the protected activity and whether such activity was a contributing factor to the unfavorable action—the investigation and termination. *See Consol. Rail Corp.*, 567 F. App'x at 338. "A 'plaintiff is not required to have direct evidence [of knowledge and] may [produce] circumstantial evidence to establish this element of her claim.'" *Id.* at 338 (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 374 (6th Cir.2013)). For example, in *Consolidated Rail Corp.*, a plaintiff was terminated after filing 35 written safety complaints and brought a FRSA claim. *Id.* at 335-36. The knowledge prong was supported by evidence that the officer who made the discharge decision shared an office with the plaintiff's supervisor and referenced the safety complaints in his testimony. *Id.* at 338. These facts, taken together, could support a knowledge finding. *Id.*

The only knowledge argument that James and Tiffany have advanced throughout this litigation is that NSR knew of their protected activity because it "was aware of the two-minute adjustment." Appellant Br. at 25. They argue that the text messages between James and Moon and deposition testimony of James and Tiffany support a reasonable conclusion that NSR knew about the two-minute backdating. The district court explained that this argument fails because it conflates knowledge of a protected activity "with the[] belief that Defendants had knowledge of an alleged computer system flaw." R. 104, PageID 1672. For the FRSA retaliation analysis, the question is whether NSR knew of James and Tiffany's claimed protected activity—their refusal to inflate their tie up times to account for the purported system backdating. Even were NSR's knowledge of the computer backdating supported by the text messages and deposition testimony,

that evidence does not lead to the conclusion that NSR knew that James and Tiffany engaged in protected activity, a refusal to inflate their tie up times. James and Tiffany dedicate none of their briefing to arguing that NSR knew that they took the position of refusing to falsely report their time or that they engaged in protected timekeeping by entering their time pursuant to Chapter 211. Because James and Tiffany failed to provide any evidence to show a genuine dispute of material fact regarding NSR's knowledge of their claimed protected activity, they did not demonstrate a prima facie FRSA case. We therefore affirm the district court's grant of summary judgment.

## III.    CONCLUSION

For the foregoing reasons, we **GRANT in part and DENY in part** the motion to dismiss and **DENY** the motion for sanctions. We **AFFIRM** the district court's judgments granting NSR's motions to dismiss and for summary judgment and BLET's motion for judgment on the pleadings.